# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO
### Judge Raymond P. Moore

Civil Action No. 1:18-cv-03230-RM-NRN

JOSE GUARDIOLA,

      Plaintiff,

v.

ADAMS COUNTY SCHOOL DISTRICT NO. 14,
ADAMS COUNTY SCHOOL DISTRICT NO. 14 BOARD OF EDUCATION, and
JAVIER ABREGO, individually and in his official capacity,

      Defendants.

---

## ORDER

---

This matter is before the Court on Defendants' motion to dismiss (ECF No. 16). Plaintiff

brought this action under 42 U.S.C. § 1983, alleging Defendants retaliated against him in

violation of his First Amendment rights. Defendants contend the complaint fails to state a claim

and that Defendant Abrego is entitled to qualified immunity. In his response (ECF No. 17),

Plaintiff abandons part of one of his claims. Defendant has filed a reply. (ECF No. 18.) The

Court has reviewed the pleadings, case file, and applicable law. For the reasons stated below, the

motion is denied.

## I. LEGAL STANDARDS

In evaluating a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as

true all well-pleaded factual allegations in the complaint, view those allegations in the light most

favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Brokers'*

*Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014); *Mink v. Knox*,

613 F.3d 995, 1000 (10th Cir. 2010).  The complaint must allege a "plausible" right to relief.

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 569 n.14 (2007); *see also id.* at 555 ("Factual

allegations must be enough to raise a right to relief above the speculative level.").  Conclusory

allegations are insufficient, *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009), and

courts "are not bound to accept as true a legal conclusion couched as a factual allegation,"

*Twombly*, 550 U.S. at 555 (quotation omitted).  To determine whether a claim is plausible, a

court considers "the elements of the particular cause of action, keeping in mind that the

Rule 12(b)(6) standard doesn't require a plaintiff to set forth a prima facie case for each

element." *George v. Urban Settlement Servs.*, 833 F.3d 1242, 1247 (10th Cir. 2016) (quotation

omitted).  However, if the allegations "are so general that they encompass a wide swath of

conduct, much of it innocent," the plaintiff has not "nudged [his] claims across the line from

conceivable to plausible." *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012)

(quotation omitted).

Qualified immunity shields individual defendants named in § 1983 actions unless their

conduct was unreasonable in light of clearly established law.  *Estate of Booker v. Gomez*,

745 F.3d 405, 411 (10th Cir. 2014).  "[W]hen a defendant asserts qualified immunity, the

plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal

constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of

the defendant's unlawful conduct." *Id.* (quotation omitted).  "Asserting a qualified immunity

defense via a Rule 12(b)(6) motion . . . subjects the defendant to a more challenging standard of

review than would apply on summary judgment." *Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004).

## II.     BACKGROUND

The following facts are taken from the complaint and, for present purposes, viewed in the light most favorable to Plaintiff.  Plaintiff was an employee of Adams County School District No. 14 and held the position of Post-Secondary/Work Readiness & Family Engagement Specialist at Lester Arnold High School.  (ECF No. 3 at ¶ 55.)  Plaintiff was also a board member of INSPIRE, a Colorado nonprofit organization with a mission "to ignite, train, and invest in youth to become Change Agents in their schools, families and communities."  (*Id.* at ¶ 29.)  Since 2014, INSPIRE has contracted with the District to work with students at various schools.  (*Id.* at ¶ 30.)

Due to the District's poor performance over a number of years, the state board of education began planning to take over certain aspects of it.  (*Id.* at ¶ 13.)  Community members, parents, and students staged multiple protests directed at Defendants' mismanagement of the District, including a student-led walkout at Adams City High School in April 2018 and formation of a group calling for the removal of Defendant Abrego as superintendent.  At some protests, students wore INSPIRE t-shirts.  (*Id.* at ¶¶ 18-20.)  Although INSPIRE did not encourage students to protest or to wear the t-shirts, it did encourage them to attend school board meetings, tell Defendants their stories, and work with school administrators.  (*Id.* at ¶¶ 32-34, 38.)

In May 2018, the executive director of INSPIRE met with administrators from Adams City to discuss their concerns that INSPIRE students were protesting the administration.  (*Id.* at ¶ 38.)  The administrators stated that they would not continue to contract with INSPIRE unless

its board members provided letters of support for the administration. About a week later,

INSPIRE's contract with Adams City was cancelled.

The following month, Plaintiff was notified by letter that his position at Lester Arnold

had been eliminated. (*Id.* at 58.) The District's letter states: "We have decided to discontinue

[the District's] contract with INSPIRE and as a result, your at[-]will position at Lester Arnold is

eliminated effective June 22, 2018." (*Id.* at ¶ 59.) But according to Lester Arnold's website,

Plaintiff's former position was soon held by another person. (*Id.* at ¶¶ 63-64.) INSPIRE

continued its program at Lester Arnold, but the principal there received a written reprimand from

the District. (*Id.* at ¶¶ 47-51.) That letter states: "No entering into a contract with INSPIRE."

(*Id.* at ¶ 51.)

Plaintiff alleges Defendants violated his First Amendment rights by firing him in

retaliation for his association with INSPIRE and for not writing a letter in support of the District.

III.    ANALYSIS

Section 1983 provides a remedy for people, including public officials, if an individual

violates their federal rights while acting under color of state law. *Cillo v. City of Greenwood

Village*, 739 F.3d 451, 459 (10th Cir. 2013). Public employee retaliation claims based on

protected First Amendment activity are subject to the four-part test derived from *Pickering v.

Board of Education*, 391 U.S. 563 (1968), and *Connick v. Myers*, 461 U.S. 138 (1983). *Id.* at

460. The *Pickering/Connick* test requires a plaintiff to show that "(1) his First Amendment

activity involved a matter of public concern; (2) his interests in the protected activity outweighed

the employer's interest in regulating it; and (3) the protected activity was a substantial motivating

factor in the employer's decision to take adverse action against him." *Id.* at 461. If the plaintiff

does so, the employer can escape liability by showing that (4) it would have taken the same action in the absence of the protected activity.  *Id.*

### A.	Freedom of Association Claim

Plaintiff's freedom of association claim is based on the legal theory that Defendants fired him in retaliation for being on the board of INSPIRE.  The government may not penalize an individual because of his membership in a disfavored group.  *Roberts v. United States Jaycees*, 468 U.S. 609, 622 (1984).  But to be protected by the First Amendment's expressive associational right, a plaintiff must allege that he associated with a group for expressive purposes.  *Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000).  This protection is not reserved for advocacy groups; however, "a group must engage in some form of expression, whether it be public or private" to come within its ambit, *id.*, and the associational conduct must touch a matter of public concern, *Merrifield v. Bd. of Cty. Comm'rs*, 654 F.3d 1073, 1081-82 (10th Cir. 2011).

Defendants raise several arguments pertaining to the first element of the *Pickering/Connick* test with respect this claim.  They assert Plaintiff fails to state a claim because the complaint does not allege (1) that INSPIRE engaged in expressive conduct, (2) that Plaintiff's association with INSPIRE involved a matter of public concern, or (3) that Plaintiff associated with INSPIRE for the purpose of engaging in protected activity.

Defendants' first argument relies heavily on Plaintiff's allegation that INSPIRE did not encourage students to protest the administration.  (ECF No. 3 at ¶¶ 32, 33.)  But taking that allegation as true does not mean that INSPIRE did not engage in any expressive activity protected by the First Amendment.  To the contrary, the complaint alleges that INSPIRE encouraged students to attend school board meetings and share their experiences with the school

5

board—quintessential protected activity. INSPIRE also sought to instill in youth a set of values that would enable them to become change agents in their communities. (*Id.* at ¶ 29.) INSPIRE's core principles are love, leadership, community, possibilities, and social change. (*Id.*) In *Dale*, the Supreme Court concluded that the Boy Scouts of American engaged in expressive activity by seeking to instill its values and principles in young people, stating, "It seems indisputable that an association that seeks to transmit such a system of values engages in expressive activity." 530 U.S. at 650. The Court finds no meaningful basis on which to distinguish INSPIRE's expressive activities from those of the Boy Scouts. Therefore, the Court finds that the allegations in the complaint show that INSPIRE engaged in protected activity.

Defendant's contention that Plaintiff's association with INSPIRE did not involve a matter of public concern also lacks merit. The complaint alleges that the District's poor performance was a concern for students, parents, community members, and the state board of education, and was the subject of several public meetings and protests. To the extent INSPIRE was involved in these activities, it was clearly exercising its right to petition on "a subject of legitimate news interest." *Merrifield*, 654 F.3d at 1084 (quotation omitted). In *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1206 (10th Cir. 2007), the court concluded that issues about whether a school's charter would be renewed and upcoming school board elections were matters of public concern. Accordingly, the Court sees no logical basis for finding that the District's poor performance was not a matter of public concern. Indeed, a reasonable inference from the allegations is that Plaintiff and INSPIRE drew criticism and scrutiny from Defendants because of their involvement with similar matters of public concern.

The public-concern requirement is meant to prevent transforming everyday employment disputes into matters for constitutional litigation in the federal courts. *Merrifield*, 654 F.3d at 1084. But at least at this stage, this case is not about the type of internal employment complaints and grievances that courts have found not to be matters of public concern. *See Brammer-Hoelter*, 492 F.3d at 1206 (discussing employee grievances that were internal in scope and personal in nature rather than matters of public concern); *see also Merrifield*, 654 F.3d at 1084 (finding plaintiff's association with his attorney did not concern anything more than an everyday employment dispute). Although this case does involve Plaintiff's personal interest in his former position, expressive association "that encompasses issues of public concern does not lose its First Amendment protection simply because some personal concerns are also included." *Tonjes v. Park Cty. Sherriff's Office*, 300 F. Supp. 3d 1308, 1328-29 (D. Colo. 2018).

Defendants' argument that Plaintiff did not allege he associated with INSPIRE for the purpose of engaging in protected activity is also unavailing. The right of association is meant to protect collective efforts to pursue a wide variety of political, social, economic, educational, religious, and cultural ends. *Roberts*, 468 U.S. at 622. "[A]ssociations do not have to associate for the 'purpose' of disseminating a certain message in order to be entitled to the protections of the First Amendment." *Dale*, 530 U.S. at 655. As discussed above, INSPIRE engaged in protected expressive activity by seeking to transmit its system of values to youth. A reasonable inference from the Plaintiff's status as a board member of INSPIRE is that he intended to contribute to that collective effort. Although some INSPIRE students chose to engage in conduct that was not encouraged by INSPIRE, such as wearing INSPIRE t-shirts and protesting the administration, that does not negate INSPIRE's expressive activity. "An association must

merely engage in expressive activity that could be impaired in order to be entitled to protection." *Id.* The Court finds these allegations provide a plausible basis to conclude that Plaintiff's association with INSPIRE was within the ambit of expressive activity protected by the First Amendment. Defendants have identified no other alleged deficiencies with respect to this claim. The Court concludes the complaint states a claim for retaliation based on Plaintiff's exercise of his right to expressive association.

      **B.**      **Freedom of Speech Claim**

The basis for Plaintiff's compelled-speech retaliation claim is that Defendants fired him because he did not write a letter supportive of the administration after Adams City administrators asked the executive director of INSPIRE for letters of support from its board members. "The First Amendment's safeguard against state action includes both the right to speak freely and the right to refrain from speaking at all." *Cressman v. Thompson*, 798 F.3d 938, 951 (10th Cir. 2015). "[T]o make out a valid compelled-speech claim, a party must establish (1) speech; (2) to which he objects; that is (3) compelled by some governmental action." *Id.*

Defendants argue Plaintiff fails to state a retaliatory compelled-speech claim because there are no factual allegations that show Defendants compelled him to say anything—there is no allegation that Plaintiff was at the meeting where the letters of support were requested or that any "threat" was conveyed to Plaintiff, and the letters were requested by Adams City administrators, not Defendants. Nonetheless, given the broader circumstances alleged in the complaint, the Court finds that the allegations support the plausible inference that an indirect form of compulsion was used.

Assuming for present purposes that such Adams City administrators threatened the executive director of INSPIRE that they (or the District) would cancel their contract with the organization, the allegations support the inference that both Plaintiff and Defendants were aware of this threat. The termination Plaintiff letter was from Defendant Abrego, who had the authority to fire Plaintiff. The letter links Plaintiff's firing to the cancellation of INSPIRE's contract with Adams City, and it was sent just weeks after the Adams City administrators asked for letters of support from INSPIRE board members, telling INSPIRE's executive director that they would not continue to contract with INSPIRE until such letters were provided. *See Tonjes*, 300 F. Supp. 3d at 1330 ("A plaintiff can assert a claim for First Amendment retaliation by showing that the protected activity was close in time to the adverse action." (quotation omitted)). After no letters of support were forthcoming, this "threat" was then carried out by Defendants. On top of that, Plaintiff was fired from his position at Lester Adams. Viewing the allegations in Plaintiff's favor, it is plausible that he would not have been fired had he or other members of INSPIRE's board produced such a letter. If the parties did not both understand that such a threat existed, there is no apparent explanation for linking Plaintiff's firing to the contract between Adams City and INSPIRE.

Further, even though Plaintiff was told that his position was eliminated, the complaint alleges that Lester Arnold hired someone else for the position. At this stage, in the absence of any other explanation as to the circumstances of Plaintiff's termination, a reasonable inference from the allegations is that Plaintiff was retaliated against because of his association with INSPIRE and the refusal of its board members to publicly support the District. Thus, the complaint plausibly alleges Plaintiff engaged in protected activity by refusing to allow

Defendants to compel him to write a letter to which he objected, and the allegations, though thin, survive Fed. R. Civ. P. 12(b)(6).

### C. Qualified Immunity

Defendants also argue that Defendant Abrego is entitled to qualified immunity as to both claims because Plaintiff has not alleged a clearly established constitutional violation. However, for the reasons given above, the allegations in the complaint state plausible deprivations of his First Amendment rights. The Court further concludes that reasonable school officials would have understood that they could not fire a District employee because he associated with an organization critical of the District or failed to provide a letter avowing his support for the District. *See Cressman*, 798 F.3d at 951 (finding the Supreme Court has consistently prohibited the government from telling people what they must say since 1943); *A.M. ex rel. Youngers v. N. M. Dep't of Health*, 117 F. Supp. 3d. 1220, 1260-61 (D. N.M. 2015) (finding the First Amendment right of expressive association was clearly established before 1979). Accordingly, Defendant Abrego is not entitled to qualified immunity at this stage of the case.

## IV. CONCLUSION

The motion to dismiss (ECF No. 16) is DENIED.

DATED this 22nd day of April, 2019.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge